## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JOSHUA W. KRUGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18-cv-512-SMY** |
| | ) | |
| **JACQUELINE LASHBROOK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge**

Plaintiff Joshua W. Kruger, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center. He asserts several First Amendment retaliation claims against Defendants.

Now pending before the Court is Defendants' Motion for Summary Judgement (Doc. 157) and Plaintiff's response (Docs. 161, 162). For the following reasons, Defendants' motion is **GRANTED in part and DENIED in part**.

### <u>Procedural Background</u>

Following preliminary screening under 28 U.S.C. §1915A, Plaintiff is proceeding on the following severed claims in this case:

| | | |
|---|---|---|
| Count 1: | First Amendment claim against Butler and John Does 1 and 13 for retaliating against Kruger for pursing litigation against IDOC staff and making statements critical of Menard mailroom staff in 2016 grievances. |
| Count 2: | First Amendment retaliation claim against Bradley, Butler, Benton, and Baldwin for rejecting the book Kruger ordered, <u>The Truth: An Uncomfortable Book about Relationships</u>, without a legitimate penological reason. |

| | |
|---|---|
| Count 3: | First Amendment claim against John Does 1 and 13 for rejecting four football preview magazines in retaliation for Kruger filing grievances about the mailroom staff at Menard. |
| Count 4: | First Amendment claim against Bradley, Shemonic, Butler, Baldwin, and Benton for rejecting Kruger's June 2016 issue of Prison Legal News in June or July 2016. |
| Count 5: | First Amendment claim against Lashbrook and Does 1-3 for retaliating against Kruger for filing a grievance in March 2017 directed at Lashbrook and John Doe 1 complaining about the mailroom. |
| Count 6: | First Amendment claim against John Does 1 and 3, Lashbrook, Phoenix, and Baldwin for rejecting Kruger's requested book, Tools for Titans, in April 2017 with no legitimate penological purpose. |
| Count 13: | First Amendment claim against Butler, Lashbrook, and John Doe 1 for failing to adequately staff and train the mailroom staff resulting in unconstitutional mail delays, unjust censorship, and confiscation and rejection of publications. |

### Factual Background

The following relevant facts are undisputed unless otherwise indicated: Kruger has been an inmate at Menard on and off since 2003 (Doc. 158-1 at 16-18).  In October 2015, he was transferred from Pontiac Correctional Center to Menard (Doc. 162-1 at 2).

In January 2016, Kruger ordered the book *The Truth: An Uncomfortable Book About Relationships* by Neil Strauss, but Defendant Bradley, a publication review officer at Menard, denied the order, stating the book was on the IDOC's disapproved publication list (*Id.* at 3, 164; Doc. 158-15).  Warden Butler approved the denial.  (*Id.* at 3; Doc. 158-16 at 1).  Kruger filed a grievance regarding the denied order, arguing the book is not on the IDOC's disapproved publication list (Doc. 162-1 at 3).  A printout from the Publication Review system indicates an entry was made on January 1, 1951, for an inmate named Junk Junky with an IDOC number of

#A99999.  *Id.* at 5, 122.

According to Kruger, on March 29, 2016, Defendant Bradley went to Kruger's cell and told him that all his mail, especially his book orders, was causing problems (Doc. 158-1 at 53-54; Doc. 162-1 at 6).  Bradley mentioned Kruger's previous grievances against publication review and the mailroom during this exchange (Doc. 158-1 at 55).  Defendants dispute that this interaction occurred (Doc. 165 at 2).

The next day, Kruger was transferred to Pontiac on a court writ for approximately one month (Doc. 162-1 at 6).  While there, he filed grievances about the Menard mailroom directly to Defendant Benton.  *Id.*  When he returned to Menard, he began to have problems with his incoming legal mail.  *Id.*  Kruger claims 21 pieces of legal mail from the Illinois Attorney General's office were opened outside of his presence.  *Id.* at 7-8.

Under IDOC rules, incoming legal mail should only be opened in the presence of the prisoner.  *Id.* at 6, 49.  The proper procedure for legal mail delivery entails the mailroom preparing a legal mail receipt attached to the legal mail; the legal mail is logged into each prisoner's respective legal mail card; a specific officer delivers the legal mail to the prisoner who signs the receipt for it; and the legal mail is opened in front of the prisoner so an officer can check for contraband.  *Id.* at 7, 48-49, 101-110.

In June 2016, Defendants prevented Kruger from receiving his subscription for *Prison Legal News* (PLN).  Defendant Shemonic[1] reviewed the June 2016 issue of PLN and concluded that an article regarding a hunger strike at Menard could cause security and safety problems.  *Id.* at 8, 190.  Kruger filed a grievance regarding his missing issue of PLN and four missing football magazines in July 2016.  *Id.* at 8; Doc. 158-17 at 97-102.  Defendant Bradley informed Kruger

---

[1] Defendant Lisa Shemonic was a member of the statewide publication review board from 2016 to 2018 (Doc. 158-8 at 1).

that the PLN issue was approved if he agreed to the removal of page 62, which contained the article about the hunger strike (Doc. 162-1 at 8; Doc. 158-16 at 2).  Defendant Butler, Menard's Warden at the time, concurred with the course of action (Doc. 158-16 at 2).  Kruger then filed another grievance complaining about Defendants Shemonic and Bradley censoring PLN's June 2016 issue (Doc. 162-1 at 8-9).

Kruger filed another formal grievance regarding Menard's mailroom's slow delivery of incoming mail on March 1, 2017.  *Id.* at 9.  Menard's Wardens, Butler and Lashbrook, admit that mailroom staff shortages caused some delays, but state that the issue was later resolved (Doc. 158-3 at 2; Doc. 158-4 at 2).  A counselor and grievance officer contacted Defendant Gimber, supervisor of the mailroom, regarding Kruger's grievance (Doc. 162-1 at 9).

Two weeks later, the mailroom denied Kruger a copy of the book *Tools for Titans*, claiming that it was oversized and thus a security problem.  *Id.* at 9, 115; Doc. 158-17 at 71-72; Doc. 158-20 at 2.  At the time, Menard lacked a formal written oversized book policy.  A policy was later created in April 2018, which prevents books over five pounds because they may be used as a weapon (Doc. 162-1 at 10, 112, 174).  Kruger's mother weighed and measured *Tools of Titans* and found that it weighed only 37.7 ounces, or a little over two pounds.  *Id.* at 10, 114.  Defendants dispute that the book weighed 37.7 ounces (Doc. 165 at 3).  Kruger filed a grievance concerning the book's rejection, which Defendants Lashbrook, Phoenix, and Baldwin upheld[2] (Doc. 162-1 at 10; Doc. 158-17 at 70-71).

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine

---

[2] Defendant Lashbrook was Menard's Warden; Defendant Melissa Phoenix was a member of the Administrative Review Board (ARB); and Defendant Baldwin was the Acting Director of IDOC at the time of this grievance (Doc. 158-2; Doc. 158-3; Doc. 158-7).

issue as to any material fact or where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.  *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

A prison official who acts in retaliation for a prisoner's exercise of a constitutional right violates the Constitution.  *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).  To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was a motivating reason for defendant's actions.  *See Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

### Count 1 – Butler, Gimber, Carson, Hunter, Heiman, Roider, Hermann and Klein

Kruger alleges that Defendants Butler, Gimber, and other mailroom staff retaliated against him for pursuing litigation against IDOC staff and making statements critical of Menard's mailroom staff in his 2016 grievances.  He asserts that after filing two grievances in March 2016 about Menard's mailroom directly to Defendant Sherry Benton, he began having problems with his incoming legal mail.  In particular, he claims that 21 pieces of legal mail from the Illinois Attorney General's office were opened outside of his presence over the course of nine months.

Filing grievances is a protected activity.  However, Kruger has failed to establish that he suffered a deprivation and that his First Amendment activity was a motivating factor for Defendants' actions. While some legal mail was opened outside his presence, Kruger nevertheless

received his legal mail.  (Doc. 158-1 at 27).  Moreover, he admits that he did not suffer an adverse court ruling in any of his cases resulting from opened legal mail.  *Id*. at 130-31.  In sum, Kruger has not been subjected to a deprivation that would likely deter future First Amendment activity.

Additionally, the record lacks evidence that Kruger's grievances were the motivating reason for Defendants' actions.  Kruger speculates that Defendants Gimber and Butler created an unwritten policy to open his legal mail outside of his presence.  And because he never had mail problems until he filed two grievances while at Pontiac, he believes his grievance filing motivated Defendants to retaliate.  But he offers no evidence that could confirm his speculation; he acknowledges that no one at Menard has ever said they were opening his legal mail outside of his presence because he was filing grievances (Doc. 158-1 at 55) and that the  mailroom employees did not know about his grievances or previous lawsuits (Doc. 158-1 at 55, 66; Doc. 158-10; Doc. 158-11; Doc. 158-12; Doc. 158-13; Doc. 158-14; Doc. 170).  It is also undisputed that Defendant Butler was not involved with processing legal mail (Doc. 158-4 at 1).

For these reasons, Defendants are entitled to summary judgment on Count 1.

### Count 2 – Bradley, Butler, Benton, and Baldwin

Defendants argue that Defendant Bradley recommended Kruger be denied access to the book, *The Truth*, for a legitimate penological reason – it was on the disapproved publication list. Kruger alleges that Bradley came to his cell a month after he was denied access to the book to complain that his mail, especially his book orders, was causing problems and specifically mentioned his previous grievances, and argues this evidence demonstrates that Bradley had retaliatory motivations for denying him access to the book.

The evidence on record indicates that the book Kruger ordered has a similar or the same title as a book that was placed on the disapproved list in 1988 but is not the same book. (Doc. 158-1 at 52; Doc. 158-15; Doc. 158-16 at 3; Doc. 162-1 at 122).  This evidence, along with Kruger's

testimony regarding the alleged encounter he had with Bradley after his order was rejected, creates a material issue of fact as to whether Bradley rejected Kruger's order for legitimate penological reasons or in retaliation for his previous grievances.  However, the record lacks evidence that Defendants Butler, Benton, and Baldwin concurred in the publication denial for retaliatory reasons. Therefore, summary judgment as to Count 2 is denied with respect to Kruger's claim against Defendant Bradley, but granted with respect to his claim against Defendants Butler, Benton, and Baldwin.

### Count 3 – Gimber, Carson, Hunter, Heiman, Roider, Hermann , and Klein

Kruger concedes that there is no evidence the football magazines ever arrived at Menard or that they were thrown away by mailroom staff (Doc. 162 at 19).  Therefore, Defendants are entitled to summary judgment on Count 3.

### Count 4 – Bradley, Shemonic, Butler, Baldwin, and Benton

The June 2016 issue of the *Prison Legal News* included an article about a hunger strike at Menard.  Defendant Bradley concluded the article "depicted, described, or encouraged activities that may lead to the use of physical violence or group disruption, or it facilitates organizational activity without approval of the Chief Administrative Officer" and recommended conditional approval of distribution if page 62 was removed (Doc. 158-16 at 2).  Defendants argue the article was censored for safety and security purposes; a legitimate penological reason.

When determining if a regulation is reasonably related to legitimate penological interests, courts consider: (1) whether a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it exists, (2) whether there are alternative methods of exercising the right that remain open to the inmate, (3) the impact of accommodating the right on staff, inmates, and prison resources, and (4) the absence of ready alternatives. *Turner v. Shafley*, 482 U.S. 78, 89-90 (1987).

Defendants only sought to restrict one article in the PLN issue, allowing Kruger to still receive his publication conditionally.  He was notified of this decision but chose to grieve the matter. Defendant Butler's signatory concurred with the recommendation and denied the publication (Doc. 158-17 at 98).   It is undisputed that the article was removed for safety and security reasons, which is a valid penological reason to censor the publication.[3]  Without Kruger's consent to remove page 62, prohibiting the publication from entering the institution entirely was the only way to prevent the content from being distributed to Kruger and other inmates.  *See Thornburgh v. Abbott*, 480 U.S. 401, 413 (1989) ("in the volatile prison environment, it is essential that prison officials be given broad discretion to prevent such disorder").   The impact of accommodating Kruger could have caused safety and security issues for staff and other prisoners. Accordingly, Defendants are entitled to summary judgment on Count 4.

**Count 5 – Lashbrook, Gimber, Carson, Hunter, Heiman, Roider, Hermann, and Klein**

In his March 1, 2017, grievance, Kruger complains of delayed incoming and outgoing mail at Menard.  He does not allege that the mail delays are in retaliation for something or for any malevolent reason.  He requested that the mail be processed promptly, hire new staff, and stop opening his legal mail (Doc. 158-21 at 17).  A Counselor responded to his grievance, indicating that all outgoing and incoming mail was current and encouraged Kruger to contact the U.S. Postal Service if mail was not reaching an outside destination.  *Id.*  There is no evidence that Kruger appealed this grievance to a Grievance Officer, the Warden, or the ARB (Doc. 158-17 at 1). Mailroom staff also state they had no knowledge of Kruger's grievances or lawsuits so they could not have retaliated against him.  As discussed below, some temporary staff shortages caused minor

---

[3] Although publication policies have changed to allow historical depictions of events, at the time, Defendants were following Administrative Directives in force which permitted publications to be disapproved for safety and security reasons (Doc. 158-20 at 2; Doc. 162-1 at 144).

mail delays but was later resolved.  Because Kruger failed to show that Defendants were motivated by his First Amendment activity, Defendants are entitled to summary judgment on this count.

### Count 6 – Gimber, Phoenix, Baldwin, Carson, Hunter, Heiman, Roider, Hermann, and Klein

When a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.  *O'Lone*, 42 U.S. at 349.  A Counselor and Grievance Officer both contacted Defendant Gimber regarding Kruger's March 1, 2017 grievance. Two weeks later, the mailroom denied him a copy of the book *Tools for Titans* claiming that it was oversized and thus a security problem.  At the time, Menard lacked a formal written oversized book policy; a policy was later created in April 2018, which prevents books over five pounds at Menard because they may be used as a weapon.  Kruger's mother weighed and measured *Tools for Titans*, finding it weighed a little over two pounds.  While preventing oversized books that could be used as weapons is a legitimate penological reason to deny an inmate a book, *Tools for Titans* would not be denied as being oversized even under Menard's new formal policy because it is under five pounds.  Under these facts, A reasonable jury could find that *Tools for Titans* was rejected for retaliatory reasons.

Kruger, however, fails to sufficiently allege who denied his book.  Melissa Phoenix and John Baldwin merely concurred in the decision to deny *Tools for Titans* based on the belief the book was oversized, rather than for retaliatory reasons (Doc. 158-2 at 1; Doc. 158-7 at 4).  Kruger admitted that he only named Defendants Tracy Heiman, Brandon Hunter, Mark Roider, and Daniel Klein in his Complaint because they were listed as on duty in the mailroom during the period of his Complaint (Doc. 158-1 at 125-26).  Brandon Hunter and Devon Hermann were not working in the mailroom at the time *Tools for Titans* was denied (Doc. 158-10 at 2; Doc. 158-13 at 1).  There is no evidence on the record as to the who specifically denied Kruger access to *Tools for Titans*—

the mail return slip at Exhibit T is blank and Kruger's grievance fails to name a specific IDOC employee as responsible; he states that the denial was "by mailroom staff" (Doc. 158-17 at 72-73; Doc. 158-18).   Absent evidence of who denied his book order, Kruger cannot establish the Defendants herein were motivated by retaliatory reasons.   Therefore, Defendants are entitled to summary judgment.

### Count 13 – Butler, Lashbrook and Gimber

The First Amendment "applies to communications between an inmate and an outsider." *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000).   "A valid [First Amendment] claim requires an allegation that there has been 'a continuing pattern or repeated occurrences' of denial or delay of mail delivery;" thus, sporadic disruption of mail service is insufficient.   *Pendegraft v. Campanella*, No. 17-CV-00447-SMY, 2017 WL 3387071 (S.D. Ill. Aug. 7, 2017) (quoting *Zimmerman v. Tribble*, 226 F.3d at 572); *see also Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Sizemore v. Wiliford*, 829, F.2d 608, 610 (7th Cir. 1987).

Defendants Butler and Lashbrook admit that there was a mailroom staff shortage at one point, which caused some mail delays, but the shortage was later resolved.   Light duty staff temporarily worked in the mailroom to help with the mail delays and more staff were eventually hired (Doc. 158-3 at 2).   The record fails to show that Kruger suffered a deprivation beyond minor and inconvenient mail delays of two-to-three-weeks – he was never denied mail.   Defendants are therefore entitled to summary judgment.

### Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 157) is **GRANTED in part and DENIED in part**.   Counts 1, 3, 4, 5, 6, and 13 are **DISMISSED**; Plaintiff's claims against Defendants Butler, Benton, and Baldwin in Count 2 are **DISMISSED**; his claim against Defendant Bradley remains.   The Clerk of Court is **DIRECTED** to enter

judgment accordingly at the conclusion of the case.

**IT IS SO ORDERED.**

**DATED:  October 5, 2022**

**STACI M. YANDLE**
**United States District Judge**